## Appeal of MAJ Entertainment Inc. v. Zoning Board of Adjustment of the City of Philadelphia

*Kenneth A., Young,* for appellant.
*Cheryl L. Gaston,* for appellees.

DiVITO, *J.,* December 7, 2006—

## PROCEDURAL HISTORY

MAJ Entertainment Inc., has appealed from an order issued by the court, affirming a decision of the Zoning Board of Adjustment of the City of Philadelphia (ZBA) denying an appeal from a cease operations order issued by the Philadelphia Department of Licenses and Inspections on November 13, 2005, against a property located at 712-714 South Street, Philadelphia. Following a public hearing held on January 18, 2006, the ZBA made findings of fact and reached conclusions of law. Having reviewed them, as well as the entire record in

this matter, it is the suggestion of the court that MAJ's appeal be rejected.

## FACTUAL HISTORY

On July 11, 2000, MAJ obtained Use Registration Permit no. 437206, which allowed it to operate a public eat-in restaurant only on floors 1, 2 and 3 of 712-714 South Street. The permit also allowed accessory live entertainment and dancing by patrons, not as defined in 14-1605 of the Zoning Code and not to exceed 25 percent of the gross floor area of the third floor only, with accessory storage in the basement. Upon obtaining the permit, MAJ opened an establishment under the name "Kama Sutra". Kama Sutra, according to the facts, was open only Fridays and Saturdays and was operated as a private club, and not as a restaurant open to the general public. Persons wishing to patronize the establishment were required to pay various fees depending on their gender and other criteria to enter it and, once inside, were permitted to engage in adult consensual sexual activity with other like-minded patrons on the club's second floor. Kama Sutra made use of various media outlets to inform the public of this aspect of the enterprise and of the activities that could be engaged in inside it.

Once the appropriate Philadelphia Municipal Authorities learned of what was taking place inside Kama Sutra, a cease operations order was posted on November 13, 2005 directing that Kama Sutra stop maintaining and/or operating a restaurant, contrary to the approved permit, and cease operating and/or maintaining

a sex club and a private club without having obtained the appropriate zoning and/or use permits. Kama Sutra responded by filing a petition with the ZBA which, as noted above, dismissed the appeal and denied MAJ's request for a stay.

## DISCUSSION

MAJ has set forth five issues in its 1925(b) statement. Having carefully reviewed those issues, it is clear that they are meritless and, therefore, MAJ's appeal should be denied. In its first issue, MAJ asserts that the cease operations order issued by the City of Philadelphia was promulgated erroneously because MAJ held valid permits which permitted it to operate a sex club and because the operation of a sex club violated no laws or zoning ordinances of the City of Philadelphia. Based on these same reasons, MAJ claims in its second issue that the ZBA erred in refusing to stay the cease operations order. Since both issues involve the propriety of the cease operations order, they will be consider together.

In cases such as the instant one, where the lower court does not receive any additional evidence, the standard of review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 554, 462 A.2d 637, 639 (1983). Here, the cease operations order, which the ZBA refused to lift was issued because the activities being engaged in inside Kama Sutra, specifically, dancing and live entertainment, violated a 1988 agreement reached be-

tween parties not involved in the present matter, which such agreement prohibited, inter alia, dancing and live entertainment, and because the use of the facilities to operate a sex club was not a use incidental to the use permitted by the licenses issued for the premises.

This court finds the issuance of the cease operations order and the ZBA's refusal to stay the order are both supported by the record and the law. First, with respect to the 1988 agreement, MAJ agreed with the ZBA at the hearing before it, that the provisions of the 1988 agreement ran with the land and thus, were still in effect in 2000, when MAJ received its licenses and permits. (N.T. 1-18-06, pp. 32-41.) Thus, with respect to this point, it is clear that neither the Department of Licenses and Inspections or the ZBA erred in issuing and not lifting the cease operations order based on the 1988 agreement which prohibited the activity taking place in Kama Sutra.

In addition, the cease operations order was issued properly and the ZBA also ruled correctly in refusing to lift the cease operations order based on the fact that the property was not being used in accordance with the permit and license issued for the property. While Kama Sutra had a restaurant license and a dance permit, they did not permit Kama Sutra to run a private sex club. The restaurant license, for example, permitted the use of the premises for a restaurant open to the general public and not a business catering only to those interested in engaging in public sex acts. Given this, it is clear that Kama Sutra was being utilized in a manner not consistent with the permit and license issued by the

city and thus was properly ordered closed on account of this.

In response to the ZBA's finding that Kama Sutra was being used to house activities outside the scope of its license and permit, MAJ argued that the use of the premises as a private sex club was incidental to its use as a restaurant. It also argued that since Philadelphia's Zoning Code does not expressly prohibit operating a sex club, the cease operating order should not have been issued and the ZBA should have lifted it.

Clearly, the ZBA ruled correctly in not lifting the stay on these grounds and in failing to find that the cease operations order had been issued erroneously for, clearly, operating a sex club was not an activity incidental to the operation of a restaurant/dance club. An incidental or accessory use is one which is subordinate to and customarily incidental to the main use of a property. See section 14-101.(2) of the Philadelphia Zoning Code. It is quite a stretch to say, as MAJ suggests, that the sexual activities engaged in inside the club arose out of the customary operation of the restaurant.

In addition, MAJ's claim that the cease operations order should not have been issued and thus should have been lifted because no law or provision of the Zoning Code prohibits operating a sex club was properly rejected by the ZBA. Merely because an activity is not specifically prohibited by the Zoning Code does not mean that someone may engage in that activity. See *Strunack v. Ecker,* 283 Pa. Super. 585, 424 A.2d 1355 (1981), *reversed on other grounds; Miller v. Johnson,* 496 Pa. 290, 436 A.2d 1187 (1981); *South Whitford*

*Associates Inc. v. Zoning Hearing Board of West White-land Township,* 157 Pa. Commw. 387, 395-96, 630 A.2d 903, 907 (1993).

Accordingly, for all of the foregoing reasons, MAJ's first two claims should be deemed meritless.

MAJ next alleges that this court erred by failing to consider a copy of correspondence dated August 8, 2001, written by MAJ's business attorney to Ms. Claire Gaztner, the Zoning Commissioner of the City of Philadelphia. This court avers that it did consider the letter, as did the ZBA, in deciding to affirm the decision of the ZBA. Thus, this issue should be rejected.

Fourthly, MAJ argues that both this court and the ZBA erred in finding that an agreement reached between a former tenant of the property and the city applied to MAJ. As noted in the discussion of the first two issues herein, MAJ agreed that the agreement in question did apply to the premises. Thus, this claim should be rejected.

Finally, MAJ argues that the ZBA and this court erred in finding that non-commercial adult consensual activity is prohibited by the Philadelphia Zoning Code and is not a use incidental to operating a restaurant with live entertainment and dancing. A review of the ZBA's findings of fact and conclusions of law shows that the ZBA did not rule that non-commercial adult consensual sexual activity is prohibited by the Zoning Code. Rather, it found, inter alia, that the premises were not being used in accordance with the license and permit issued for the premises and that the sexual activity was

not activity incidental to the lawful use of the premises. In addition, this court never made such a finding. Given this, MAJ's claim that it was error for the ZBA and this court to find that the Zoning Code prohibits consensual sexual activities should be deemed meritless.

As to MAJ's claim that the ZBA and this court erred in not finding that the sexual activity constituted an incidental use, that issue has already been discussed herein and found to be meritless. No further discussion is necessary thereon.

## CONCLUSION

Based on the foregoing, the decisions reached in this matter should be affirmed.